UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
BRAVADO INTERNATIONAL GROUP         )
MERCHANDISING SERVICES, INC.,       )
                                    )
            Plaintiff,              )   CIVIL ACTION NO.
                                    )
vs.                                 )
                                    )
JOHN DOES 1-100, individuals,       )
JANE DOES 1-100, individuals,       )
and XYZ COMPANY, business           )
entity form unknown, inclusive,     )
                                    )
            Defendants.             )
_____)

**DECLARATION OF THOMAS DONNELL**

I, THOMAS DONNELL, hereby declare as follows:

1.  I make this declaration in support of Bravado International Group Merchandising Services, Inc ("Plaintiff") ex-parte application for: a temporary restraining order; seizure order; and a preliminary injunction and national seizure order to issue in the above referenced matter similar to orders previously granted to by this District to other groups. See Certificate of Counsel, Exh. A thereto.

2.  I have personal knowledge of the facts set forth herein and am authorized by Plaintiff to make this declaration. If called as a witness, I could and would be able to testify competently to such facts.

3.  Plaintiff is engaged in the business of manufacturing, distributing and selling authorized merchandise such as T-shirts, jerseys, sweatshirts, posters, among other goods bearing the names, likenesses and copyrights owned by popular musical groups and performers (collectively "Tour Merchandise").

4.   Plaintiff has obtained the exclusive rights to distribute Tour Merchandise at all concerts on the current North American concert tour (the "Tour") of the performing group **"MUSE"** (the "Group").  Plaintiff has expended considerable money to obtain the exclusive rights to distribute the Tour Merchandise of the Group.

5.   I am responsible for the merchandising and security on the Tour.  A copy of the Group's current tour itinerary is attached as Exhibit "A" and is incorporated by this reference as though fully set forth herein. .

6.   I am Vice President of Artists and Repetrior for Plaintiff.  I have been employed by Plaintiff for approximately 6 years. Prior to that, I worked in a similar position for Giant Merchandising for over 10 years. My primary responsibility at Plaintiff is merchandising and security on popular music tours.  I have personally been involved on over 70 tours working for and/or supervising merchandising including bootleg security.

7.   "MUSE" the trademark of this prominent and successful musical performing group, in commercial use for nearly 20 years.  The Group has released over 7 albums which have sold over 15 million units.  The Group's well known albums include "The Resistance," "Black Holes and Revelations," and "Absolutions." The Group's well known singles include "Starlight," "Time is Running Out," "Uprising," "Plug in Baby," "Feeling Good," "Supermassive Black Hole, "and "Hysteria." The Group has been nominated for and has won numerous awards, including winning 2 MTV Europe awards for best alternative act.  The Group has appeared on television programs broadcast nationwide including Live 8, Saturday Night Live (December, 2009), and the Today Show, broadcast nationwide.  The Group's songs have been featured in the soundtrack

for well known movies such as "Twilight" and television programs such as "The Sopranos" and "Entourage." Their songs have also been featured in the very popular video game Guitar Hero. The Group has also appeared in numerous magazines distributed nationwide, including Rolling Stone and People.

    8. The Group has obtained Federal Trademark Registrations for its **MUSE** trademark: Federal Registration Number 2322679 for use in connection with International Class ("IC") 009 namely pre-recorded compact discs and audio cassette tapes featuring music and IC 041 entertainment, namely, live performances by a musical band.

    9. This tour is highly anticipated and many of the Group's concert dates are sold out or almost sold out. Because of the Group's status among popular music enthusiasts, the tour is expected to be a very successful and Plaintiff anticipates that other dates will be added to the current Tour itinerary. The Tour involves many large-capacity venues, i.e., arenas seating in excess of 10,000 people. Income from the sales of Tour Merchandise is expected to be very substantial.

    10. The Group derives income and promotes their images in part from sales of recordings and live performances, and in part through the sale of merchandise associated with them. The Group and Plaintiff spend a great deal of care, time and money in developing the merchandise associated with the concert tours. Care is taken that the Tour Merchandise bearing the Group's marks or likenesses are of a high quality and are appropriate to their images.

11. Tours by the Group, and other artists of their stature, have recurring problems with individuals who sell unauthorized Tour Merchandise near, at and sometime inside a concert venue. These individuals are referred to as "Bootleggers," their activities are known as "Bootlegging" and their goods are referred to as "Bootleg Merchandise" or "Unauthorized Merchandise."

12. On every major prior tour by artists of the caliber and following of this Group, Defendant Bootleggers have appeared selling their unlawful goods. In order to combat this on tours by this and other groups, Plaintiff and other merchandisers have obtained temporary restraining and seizure orders, and thereafter preliminary injunction and nationwide seizure orders to seize the unauthorized goods from the Defendants. See Certificate of Counsel of Cara R. Burns, filled concurrently herewith.

13. In my experience, the Bootlegging problem has grown with the popularity of popular music tours. In virtually every instance, the Defendants sell identical shirts, indicating that they are supplied from a common source. Individual Bootleggers are recognized from venue to venue as they follow the tours.

14. My staff and I have followed a substantial amount of tours of various artists and frequently observe the same individuals selling Unauthorized Merchandise at many of the venues for each artist. Organized Defendant Bootleggers generally follow a tour themselves or arrange to have local individuals sell the Unauthorized Merchandise for them. On the past few tours, I have seen a few similar designs being sold by the Defendants throughout a tour.

15. In the present circumstances, given the Group's popularity, it is not difficult to understand the motives of the Defendants. All of the concerts on this Tour are expected to be sold out or nearly sold out. The Group will perform before hundreds of thousands of people by the end of the Tour. The fans attending the various concerts frequently seek to purchase a souvenir, such as a T-shirt. Defendant Bootleggers are typically (and were in this case) located outside the concert venues and therefore have the first and last opportunity to make these sales. Further some Defendants sell their Unauthorized Merchandise inside the venues.

16. Bootleggers have appeared on the tour, which has recently begun. Without an order, when members of my staff inform the Defendants that they are selling Unauthorized Merchandise, they usually just walk away and/or continue to sell the Unauthorized Merchandise. The Defendants do not respond when we asked for their names. All Defendants Bootleggers ignore our requests to stop selling unauthorized merchandise. The Defendant Bootleggers respond that they want to see our "injunction" or "order" or else they will not stop their unlawful activities. From the nature and context of their statements, it is obvious that the "order" or "injunction" they refer to is a search, seizure and impoundment order that we seek from this court. The shirts they were selling and offering for sale had the places where the tour would be performing. These shirts contained the trademark, as well as designs, images and logos of the tour which are exclusively licensed to Plaintiff to be sold at venues.

17. Based on my experience, these Defendants will appear at every performance set forth in Exhibit A to sell Unauthorized Merchandise, unless this Honorable Court grants to Plaintiff the order it seeks. Moreover, there appears to be a

pattern to their Unauthorized Merchandise; each sell one of a few designs with the trademarks, service marks, trade names, likenesses, images or tour logos of the Group. Also since some of these designs have all of the Tour dates on them, based on my experience, this indicates that they will continue to go from venue to venue and sell their Unauthorized Merchandise.

18. Bootlegging activities greatly injure musical performing artists, including the Group and legitimate merchandisers, including Plaintiff, in two ways. First, the Defendant Bootleggers are not bound by contract to provide first-quality apparel and graphic designs, as is required of Plaintiff. Second, the Defendant Bootleggers can drastically undersell us, a legitimate merchandiser, because, unlike Plaintiff, Defendant Bootleggers have no obligation to pay the Group royalties and do not have to pay any part of their gross sales receipts to the concert venue. This ability to undersell the legitimate Tour Merchandise is also enhanced by the fact that Defendant Bootleggers do not collect or pay sales or income taxes.

19. The consumer, the fans of the Group also suffer. Unauthorized Merchandise is an inferior imitation which rarely lasts very long. The quality of the T-shirts and the designs are poor; many T-shirts appear to be seconds and the colors on the designs tend to "run" or "bleed" into each other. The fans are disappointed and, in their confusion as to the source of the Unauthorized Merchandise, blame the artists. This affects future legitimate sales and also tends to create a negative feeling by the fans directed against the artists, which may in turn cause decreased record sales and concert attendance.

20. The Defendants' Unauthorized Merchandise is intended and will cause the general public to believe that their Unauthorized Merchandise is authorized, approved and sponsored by the Group. Consequently, not only does the sale of this Unauthorized Merchandise violate Plaintiff 's exclusive rights, but also causes the general public to be adversely affected and irreparably harms Plaintiff 's and the Group's reputations for excellence and integrity in the legitimate Tour Merchandise.

21. The unchallenged presence of Defendant Bootleggers in our marketplace destroys the market and damages Plaintiff's business at every level. Our business has been built on making authorized Tour Merchandise available throughout the United States on the Group's Tour.

22. The precise damage to Plaintiff is incalculable. The Unauthorized Merchandise sells for approximately half the price (or less) of the genuine Tour Merchandise and the people involved in the illegal merchandising activities keep no records. On the basis of my past experience with such Defendants, I believe these Defendants would dispose of or destroy any Unauthorized Merchandise or related documents should legal proceedings be commenced against them.

23. The incalculable damage caused by the Defendants severely diminishes our ability to make these products available, to say nothing of depriving the rightful owners of their return. We must therefore do everything we can to curtail the Bootlegging activities of the Defendants and this is why we are seeking the assistance of this Honorable Court to obtain an order allowing the seizure of Unauthorized Merchandise.

24.  I believe the difficulties in identifying the Defendants, the fact that they have no fixed place of business and no assignable assets, make them virtually immune to normal process or to any process except by way of restraining order against persons unknown and allowing the seizure of the Unauthorized Merchandise pending a final disposition by this Honorable Court.

25.  Plaintiff is a substantial and successful business and will safely be able to hereby undertake to meet any order made to compensate the Defendants or any of them for any damages suffered by them as a result of any order obtained on our behalf. However, in my experience, no Bootlegger has ever appeared at an order to show cause hearing or sought relief in the countless number of nationwide search, seizure and impoundment orders.

26.  In short absent significant protection from the courts, the Defendants have an insurmountable advantage over the artists and legitimate merchandisers who obtain the right to use performer's names, likenesses and related rights. Left unprotected, merchandisers will be unable to offer performers appropriate sums for these rights, pertaining to artists' names and likenesses, and related tour logos. This in turn limits the performers, ability to stage unique and exciting concerts for their fans and can, in some instances, prevent an artist from touring altogether. The injury affects the artist, the exclusive licensee (Plaintiff), and the fans.

I declare under penalty of perjury under the laws of the United States and the State of Massachusetts that the foregoing is true and correct.

Executed February 26, 2010 at Los Angeles, California.

_____
THOMAS DONNELL